UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**WILLIE ROSCOE UNDERWOOD**                                                    **PETITIONER**

**v.**                                                    **CIVIL ACTION NO. 4:06CV-P41-M**

**JAMES L. MORGAN, WARDEN**                                                    **RESPONDENT**

**MEMORANDUM AND ORDER**

Petitioner Willie Roscoe Underwood filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is currently before the Court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Although the Court concludes that the petition is untimely, it will nonetheless allow Petitioner to file a response before dismissing the action.

**I.**

In early 1993, Petitioner Underwood was charged with capital murder, first degree robbery, and first degree burglary. On April 15, 1993, he entered a plea of not guilty, and on May 20, 1993, the Commonwealth announced its intention to seek the death penalty. Prior to the scheduled trial date, the Commonwealth entered into plea negotiations with Petitioner. The Commonwealth agreed to waive the death penalty if Petitioner would plead guilty to the charges contained in the indictment. Petitioner "privately[] insisted that he did not enter the [victim's] home with any intent to commit a crime, but [his defense counsel], having not adequately prepared for trial, vigorously advocated for the Commonwealth's 'bargain.'" Thus, "[w]ith the thought of the death penalty looming over him," Petitioner accepted the offer and entered a guilty plea on June 28, 1994. Final judgment was entered on June 29, 1994. On the murder

charge, Petitioner was sentenced to life without possibility of parole until service of a minimum of twenty-five years. On the robbery and burglary charges, he was sentenced to twenty years, each to run consecutive for a total of forty years and concurrent with the life sentence.

Public Defender Joel Embry represented Petitioner Underwood in the criminal proceedings. Petitioner reports that Mr. Embry was formally disbarred in July 2000, due to his conviction on several offenses, including second-degree manslaughter, first-degree possession of a controlled substance, and possession of marijuana and drug paraphernalia. He claims that "[d]uring the course of the disbarment proceedings, Mr. Embry admitted that his drug use had been long and protracted, reaching back to the same time when he represented the Petitioner."

According to Petitioner,

> During times when the Petitioner attempted to speak with Mr. Embry regarding the key facts and circumstances surrounding the case and to prepare a potentially-viable defense as to murder and robbery charges, the attorney appeared dazed and uncommunicative, almost as if he was in a stupor. At times counsel could barely talk, and when he did speak his words were ambiguous and slurred. Mr. Embry evinced no appearance of interest in the Petitioner's welfare. It could be no clearer to any reasonable person that during the time Mr. Embry represented the Petitioner on this Murder charge he was laboring under the influence of illicit drugs or alcohol or both.

Petitioner claims that while Mr. Embry was in this "impaired" state, he failed to pursue the defense of extreme emotional disturbance; failed to seek assistance from the State Department of Advocacy's Capital Trial Unit or other experienced attorney even though he knew his level of proficiency was diminished due to drug and alcohol use; failed to secure a mental health expert to refute the testimony of Dr. Robert Noonan; and failed to return Petitioner's calls or meet with him in order to discuss a proper trial strategy.

On May 5, 2004, "almost immediately after learning of Mr. Embry's criminal convictions for manslaughter and protracted drug use," Petitioner filed a Rule (CR) 60.02 post-conviction motion in state court, challenging the validity of his guilty plea due to ineffective assistance of counsel.  On May 20, 2004, the Hopkins Circuit Court denied the post-conviction motion on the ground that Petitioner should have filed a Rule (RCr) 11.42 motion instead.  The court further concluded that even if he had filed a RCr 11.42 motion, it would have been untimely.  Petitioner appealed to the Kentucky Court of Appeals, which affirmed the trial court's decision.  He then filed a motion for discretionary review, which the Kentucky Supreme Court denied on November 16, 2005.

Petitioner filed the instant petition on February 22, 2006.[1]  He alleges that his guilty plea was unknowing and involuntary due to ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

**II.**

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of the AEDPA apply. *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000).  The AEDPA sets forth a statute of limitations for state prisoners seeking release from custody.  The statute provides as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

---

[1]"Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Absent evidence to the contrary, the Court presumes that Petitioner deposited his petition for mailing on February 22, 2006, the date he signed the petition.

>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) and (2).

In the present case, Petitioner did not file a direct appeal of his conviction. Therefore, the one-year limitations period began to run at "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's conviction thus became final on July 11, 1994, ten days after the trial court entered the judgment of conviction. *See* RCr 12.04 (1981) (amended 1998).

Because Petitioner's conviction became final prior to the passage of the AEDPA on April 24, 1996, "he had a one-year grace period, lasting until April 24, 1997, in which to file his habeas petition." *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002)). "The one-year period of limitations is tolled by the amount of time that 'a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending' in state court." *Jurado v. Burt*, 337 F.3d at 640 (quoting 28 U.S.C. § 2244(d)(2)).

In the instant case, neither the instant § 2254 petition nor any state post-conviction motions were filed or pending during the one-year grace period from April 24, 1996, to April 24, 1997. And his filing of a Rule 60.02 post-conviction motion in May 2004 did not restart the one-year statute of limitations for filing his federal habeas petition. *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001) ("A state court postconviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.") (citing *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)).[2] Thus, the petition is untimely under the statute.

Because § 2254's one-year statute of limitations is not jurisdictional, however, it is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). "'Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Jurado v. Burt*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d

---

[2]As the district court observed:

> The tolling provisions of 28 U.S.C. § 2244(d)(2) do not re-start or revive the one year limitations period anew after there is a final decision on a state post-conviction motion. Instead, this section merely excludes the time a collateral attack is under submission to the state courts from the calculation of the one year statute of limitations period. If the one year limitations period has already expired, filing another motion for state post-conviction relief will not add new time to the limitations period. A contrary interpretation of § 2244(d)(2) would allow a prisoner to avoid the effect of the AEDPA's one year statute of limitations through the device of bringing a belated state collateral attack. Once the limitations period has fully run, a new application for post-conviction review in the state courts of claims which could have been raised before the limitations period had run does not reset or restart the limitations period.

*Smith*, 141 F. Supp. 2d at 783 (citations and footnote omitted).

552, 560-61 (6th Cir. 2000)). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys*, 209 F.3d at 561. "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494-95 (6th Cir. 2003) (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

The Sixth Circuit has "identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap v. United States*, 250 F.3d at 1008 (citing *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988)). "These factors are not necessarily comprehensive and they are not all relevant in all cases." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002) (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. (2002)). "Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Id.*

Here, Petitioner essentially argues that the statute of limitations should be equitably tolled because he did not learn of his attorney's crimes and convictions until 2004, and that he was thereafter diligent in attempting to exhaust his state remedies before filing his habeas petition. The Court finds that equitable tolling is not warranted in this case. First, Petitioner never states that he was unaware of the one-year statute of limitations applicable to habeas actions. Regardless, the Sixth Circuit has observed that "'[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling.'" *Graham-Humphreys v. Memphis*

*Brooks Museum of Art*, 209 F.3d at 561 (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (per curiam)).

Second, despite Petitioner's claim that after learning of his attorney's crimes and convictions in 2004 he "promptly sought to challenge the validity of his guilty pleas by way of one of Kentucky's post-conviction remedies," the Court finds that he has not shown due diligence in challenging the validity of his guilty plea based on ineffective assistance of counsel. While Petitioner may not have known until 2004 that Mr. Embry was disbarred, had been convicted of crimes, and had admitted to being under the influence of drugs and alcohol during the time period he represented Petitioner, Petitioner concedes that "[i]t could be no clearer to any reasonable person that during the time Mr. Embry represented the Petitioner on this Murder charge he was laboring under the influence of illicit drugs or alcohol or both." He further claims that during the time period of Mr. Embry's representation, Mr. Embry appeared "dazed and uncommunicative, almost as if he was in a stupor. At times [he] could barely talk, and when he did speak his words were ambiguous and slurred." Thus, Petitioner acknowledges that during the time period that Mr. Embry represented him, he observed that Mr. Embry was in an impaired state for whatever reason, yet failed to challenge Mr. Embry's performance until 2004. Moreover, regardless of whether Petitioner was cognizant of any impairment in counsel's mental state, Petitioner could have immediately challenged, by way of post-conviction motion and then federal habeas petition, counsel's failure to pursue the defense of extreme emotional disturbance, to secure a mental health expert to refute the testimony of Dr. Robert Noonan, and to return Petitioner's calls or meet with him in order to discuss a proper trial strategy.

"The Supreme Court has . . . 'allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Jurado v. Burt*, 337 F.3d at 642 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  The Court, however, has "'generally been much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights.'" *Jurado*, 337 F.3d at 642 (quoting *Irwin*, 498 U.S. at 96).  This is such a case where Petitioner has failed to demonstrate due diligence in preserving his legal rights.  The Court therefore concludes that Petitioner has failed to meet the requirements warranting application of the doctrine of equitable tolling.

Before dismissing the action as time barred, the Court will provide Petitioner with an opportunity to respond.  *Day v. McDonough*, — S.Ct. — , 2006 WL 1071410 (U.S. Apr. 25, 2006) (No. 04-1324) ("[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.").

### III.

**WHEREFORE, IT IS ORDERED** that within **thirty (30) days** from entry of this Order, Petitioner must show cause why the § 2254 petition for writ of habeas corpus should not be denied and the action dismissed as barred by the applicable one-year statute of limitations.

Failure to respond within the time allotted **will result in dismissal** of the action for the reasons set forth herein.

Date:

cc:	Petitioner *pro se*
4414.005