UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**WILLIE ROSCOE UNDERWOOD**                                                                    **PETITIONER**

v.                                        **CIVIL ACTION NO. 4:06CV-P41-M**

**JAMES L. MORGAN, WARDEN**                                                   **RESPONDENT**

**MEMORANDUM OPINION**

Petitioner Willie Roscoe Underwood filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On preliminary consideration of the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concluded that the petition appeared to be time barred and directed Petitioner to show cause why the action should not be dismissed.  On review of Petitioner's timely response in conjunction with the petition, the Court concludes that the § 2254 petition is time barred and must be denied.

**I. SUMMARY OF PETITION**

In early 1993, Petitioner Underwood was charged with capital murder, first-degree robbery, and first-degree burglary.  On April 15, 1993, he entered a plea of not guilty, and on May 20, 1993, the Commonwealth announced its intention to seek the death penalty.  Prior to the scheduled trial date, the Commonwealth entered into plea negotiations with Petitioner.  The Commonwealth agreed to waive the death penalty if Petitioner would plead guilty to the charges contained in the indictment.  Petitioner "privately[] insisted that he did not enter the [victim's] home with any intent to commit a crime, but [his defense counsel], having not adequately prepared for trial, vigorously advocated for the Commonwealth's 'bargain.'"  Thus, "[w]ith the thought of the death penalty looming over him," Petitioner accepted the offer and entered a guilty plea on June 28, 1994.  Final judgment was entered on June 29, 1994.  On the murder charge, Petitioner was sentenced to life without possibility of parole until service of a minimum

of twenty-five years.  On the robbery and burglary charges, he was sentenced to twenty years, each to run consecutive for a total of forty years and concurrent with the life sentence.

Public Defender Joel Embry represented Petitioner Underwood in the criminal proceedings.  Petitioner reports that Mr. Embry was formally disbarred in July 2000,[1] due to his conviction on several offenses, including second-degree manslaughter, first-degree possession of a controlled substance, and possession of marijuana and drug paraphernalia.  He claims that "[d]uring the course of the disbarment proceedings, Mr. Embry admitted that his drug use had been long and protracted, reaching back to the same time when he represented the Petitioner."

According to Petitioner,

> During times when the Petitioner attempted to speak with Mr. Embry regarding the key facts and circumstances surrounding the case and to prepare a potentially-viable defense as to murder and robbery charges, the attorney appeared dazed and uncommunicative, almost as if he was in a stupor.  At times counsel could barely talk, and when he did speak his words were ambiguous and slurred.  Mr. Embry evinced no appearance of interest in the Petitioner's welfare.  It could be no clearer to any reasonable person that during the time Mr. Embry represented the Petitioner on this Murder charge he was laboring under the influence of illicit drugs or alcohol or both.

Petitioner claims that while Mr. Embry was in this "impaired" state, he failed to pursue the defense of extreme emotional disturbance; failed to seek assistance from the State Department of Advocacy's Capital Trial Unit or other experienced attorney even though he knew his level of proficiency was diminished due to drug and alcohol use; failed to secure a mental health expert to refute the testimony of Dr. Robert Noonan; and failed to return Petitioner's calls or meet with him in order to discuss a proper trial strategy.

---

[1] A review of the disciplinary proceedings reveals that Mr. Embry was not disbarred but was actually suspended from the practice of law for a period of five years, subject to disbarment for any violation of probation and re-application to the bar at the end of the suspension period.  *See Ky. Bar Ass'n v. Embry*, 152 S.W.3d 869 (Ky. 2005).

On May 5, 2004, "almost immediately after learning of Mr. Embry's criminal convictions for manslaughter and protracted drug use," Petitioner filed a Kentucky Rule of Civil Procedure ("CR") 60.02 post-conviction motion in state court, challenging the validity of his guilty plea due to ineffective assistance of counsel.  On May 20, 2004, the Hopkins Circuit Court denied the post-conviction motion on the ground that Petitioner should have filed a Kentucky Rule of Criminal Procedure ("RCr") 11.42 motion instead.  The court further concluded that even if he had filed a RCr 11.42 motion, it would have been untimely.  Petitioner appealed to the Kentucky Court of Appeals, which affirmed the trial court's decision.  He then filed a motion for discretionary review, which the Kentucky Supreme Court denied on November 16, 2005.

Petitioner filed the instant petition on February 22, 2006.[2]  He alleges that his guilty plea was unknowing and involuntary due to ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

## II. ANALYSIS

*A. Timeliness under the statute*

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of the AEDPA apply. *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000).  The AEDPA sets forth a statute of limitations for state prisoners seeking release from custody.  The statute provides as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

---

[2]"Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Absent evidence to the contrary, the Court presumes that Petitioner deposited his petition for mailing on February 22, 2006, the date he signed the petition.

>       (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>       (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>       (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
>       (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) and (2).

   In the Court's prior Order directing Petitioner to show cause why the petition should not be dismissed as untimely, the Court determined that the first circumstance under § 2244(d)(1) applies; that is, the one-year limitations period began to run at "the expiration of the time for seeking [direct] review."  § 2244(d)(1)(A).  Since Petitioner did not file a direct appeal of his conviction, his conviction became final on July 11, 1994, ten days after the trial court entered the judgment of conviction.  *See* RCr 12.04 (1981) (amended 1998).  Because Petitioner's conviction became final prior to the passage of the AEDPA on April 24, 1996, "he had a one-year grace period, lasting until April 24, 1997, in which to file his habeas petition." *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002)).  "The one-year period of limitations is tolled by the amount of time that 'a properly filed

4

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending' in state court." *Jurado v. Burt*, 337 F.3d at 640 (quoting 28 U.S.C. § 2244(d)(2)).  In the instant case, however, neither the instant § 2254 petition nor any state post-conviction motions were filed or pending during the one-year grace period from April 24, 1996, to April 24, 1997.  And his filing of a Rule 60.02 post-conviction motion in May 2004 did not restart the one-year statute of limitations for filing his federal habeas petition. *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001) ("A state court postconviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.") (citing *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)).  Petitioner's February 22, 2006, § 2254 habeas petition is therefore untimely.

In his response to the Court's show cause Order, Petitioner argues for the application of the fourth circumstance -- the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.  § 2241(d)(1)(D). He claims, "once [he] learned of Mr. Embry's pending charges for Murder derived from alcohol and drug usage he immediately, vigorously sought assistance from the DPA [Department of Public Advocacy]. . . ."  As discussed more thoroughly in the equitable tolling section below, even though Petitioner did not know of counsel's alcohol and drug use until recent years, Petitioner clearly knew at the time his case was being prosecuted that his attorney was in an impaired state and offering "severely underpar" representation.  Because Petitioner knew of the factual predicate -- his counsel's impaired state --at the time of sentencing, the fourth circumstance is inapplicable, and the petition is untimely under the statute.

5

*B. Equitable tolling considerations*

Because § 2254's one-year statute of limitations is not jurisdictional, it is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). "'Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Jurado v. Burt*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys*, 209 F.3d at 561. "The petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494-95 (6th Cir. 2003) (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)).

The Sixth Circuit has "identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap v. United States*, 250 F.3d at 1008 (citing *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988)). "These factors are not necessarily comprehensive and they are not all relevant in all cases." *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002) (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. (2002)). "Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Id.*

In its prior Order, the Court noted that Petitioner never alleged in his petition that he was unaware of the one-year limitations period applicable to habeas actions and found that

Petitioner had not shown due diligence in challenging the validity of his guilty plea based on ineffective assistance of counsel.  The Court explained that while Petitioner may not have known until 2004[3] that Mr. Embry was disbarred, had been convicted of crimes, and had admitted to being under the influence of drugs and alcohol during the time period he represented Petitioner, Petitioner conceded that "[i]t could be no clearer to any reasonable person that during the time Mr. Embry represented the Petitioner on this Murder charge he was laboring under the influence of illicit drugs or alcohol or both."  He further claimed that during the time period of Mr. Embry's representation, Mr. Embry appeared "dazed and uncommunicative, almost as if he was in a stupor.  At times [he] could barely talk, and when he did speak his words were ambiguous and slurred."  Thus, in the petition, Petitioner acknowledged that during the time period that Mr. Embry represented him, he observed that Mr. Embry was in an impaired state for whatever reason yet failed to challenge Mr. Embry's performance until 2004.  The Court further found that regardless of whether Petitioner was cognizant of any impairment in counsel's mental state, Petitioner could have immediately challenged, by way of post-conviction motion and then federal habeas petition, counsel's failure to pursue the defense of extreme emotional disturbance, to secure a mental health expert to refute the testimony of Dr. Robert Noonan, and to return Petitioner's calls or meet with him in order to discuss a proper trial strategy.  The Court thus concluded that Petitioner had not alleged circumstances warranting equitable tolling.

---

[3]While Petitioner claims in his petition that he did not know about Mr. Embry's alcohol and drug use until 2004, in his response to the Court's Order to show cause, Petitioner alleges that he found out about Mr. Embry's charges and substance use sometime in 1999 prior to drafting his initial letter to the DPA, seeking its representation.  *See infra*.

7

Petitioner's arguments in his response do not alter this Court's prior determination. In his response, Petitioner provides additional information which he contends "will add more clarity to the matter, and adequately demonstrate that [he] was far more diligent" than he first led this Court to believe. He concedes that during the time of Mr. Embry's representation of him, it was "apparent to any reasonable person that counsel was lacking the requisite degree of care and concern for his client's welfare to survive constitutional scrutiny." He claims that immediately upon entering the Kentucky State Reformatory in 1994, he spoke with an inmate legal aide who was going to assist him in filing an RCr 11.42 motion challenging the validity of his guilty plea based on ineffective assistance of counsel. The legal aide obtained the relevant portions of the state court record and began preparing to draft the motion. However, before the motion could be drafted, and unbeknownst to Petitioner, the legal aide was placed in prison segregation for disciplinary reasons and eventually transferred to another state facility. Petitioner did not learn of the legal aide's transfer until two months after its occurrence and was unable to secure the return of his legal material until 1996, after filing a grievance for its return. These circumstances, however, do not warrant equitable tolling because the statute of limitations did not even begin to run until April 24, 1996, as Petitioner had the benefit of the one-year grace period.

Petitioner continues that "[a]lthough he searched diligently, [he] could not immediately locate another inmate Legal Aide competent and willing to prepare his motion, and [he] himself did not possess the knowledge or capability to do so on his own, given the fact that he can barely read, much less decipher and follow strict pleading and filing rules." Despite this argument, "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court

8

reason to toll the statute of limitations." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims."); *see also Gutierrez v. Elo*, No. 00-CV-74240-DT, 2000 WL 1769559, at *3 (E.D. Mich. Oct. 30, 2000) ("The fact that Petitioner is Cuban with a limited education and knowledge of English, is proceeding without a lawyer, or may have been unaware of the limitations period does not warrant tolling."); *Martinez v. United States*, Nos. 00 Civ. 1214(DLC), 96 CR. 450-04(DLC), 2000 WL 863121, at *2 (S.D.N.Y. June 28, 2000) (finding equitable tolling not warranted despite movant's allegations that he "is not proficient in the English language, lacks necessary legal expertise and training, and that the Government did not take any steps to educate him as to his rights and the applicable procedural rules").

Petitioner goes on to report that he was transferred to the Green River Correctional Complex ("GRCC") some time in 1997 and was advised by on-site legal aides that he should seek assistance from the post-conviction branch of the DPA. "In the meantime, before [he] could draft a letter to the DPA explaining his sensitive situation, [he] received a very interesting and quite relevant piece of news relating to [] Mr. Embry. . . . that Mr. Embry had been charged with Murder in an incident that involved his use of drugs and/or alcohol." According to Petitioner, this news "reaffirmed [his] theory that he received constitutionally ineffective assistance of counsel." After another inmate helped Petitioner draft a letter to the DPA, a member of the Eddyville DPA staff (Paralegal Lynn Aldridge) met with Petitioner at GRCC on November 23, 1999, to discuss the case. Ms. Aldridge "felt that the best option for challenging the validity of the guilty plea based on incompetent counsel rested with a Civil Rule [CR] 60.02

9

motion." Petitioner claims that he believed that the DPA had filed a motion on his behalf in 2000 and was "shock[ed] to finally realize three years later that the DPA had not accepted his case." Petitioner attaches to his response a July 8, 2003, letter from Ms. Aldridge, wherein she advises that the DPA had never taken his case and details the interaction between the DPA and Petitioner. Petitioner asserts that "[t]his letter lends support of the fact that during the period from 1999 through 2003 [he] was diligent in his efforts to file a proper [post-conviction] motion, believing that the DPA was going to represent him in that matter." The Court disagrees.

In the attached July 8, 2003, letter, Ms. Aldridge advised that she met with Petitioner on November 23, 1999, at which time she suggested that Petitioner "get a copy of the DPA case file and review it for any possible issues and to determine what Mr. Embry did or did not do in [his] case." Ms. Aldridge further advised that Petitioner was past the three-year limit for filing a RCr 11.42 motion and that his best option might be a CR 60.02 motion. Ms. Aldridge thus sent Petitioner DPA Post-Conviction Information Packets on Open Records and on CR 60.02 motions. In the letter, Ms. Aldridge continued that she did not hear from Petitioner again until March 2000, at which time Petitioner sent a DPA Questionnaire asking for an "'...update on case.'" According to Ms. Aldridge, "Since I was unsure as to what case [Petitioner was] referring to, I sent [him] a follow-up letter and asked for more information," but Petitioner did not respond to her letter. Rather, per the letter, Petitioner did not contact the DPA office again until some time in 2003, when he sent a letter to the Hopkinsville DPA office, which was forwarded to Ms. Aldridge for a response. The July 8, 2003, letter from Ms. Aldridge thus reveals that Petitioner did not actively monitor the status of his case. This failure is fatal to his equitable tolling argument. *Brown v. United States*, 20 Fed. Appx. 373 (6th Cir. 2001) ("[T]o

the extent Brown claims that he believed mistakenly that counsel was prosecuting an appeal on his behalf, this does not qualify because Brown failed in his duty to monitor the status of his appeal."); *Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) ("[P]etitioners bear ultimate responsibility for their filings, even if that means preparing duplicative petitions: petitioners, 'whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands.'") (quoting *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001)).

"The Supreme Court has . . . 'allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Jurado v. Burt*, 337 F.3d at 642 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The Court, however, has "'generally been much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights.'" *Jurado*, 337 F.3d at 642 (quoting *Irwin*, 498 U.S. at 96). This is such a case where Petitioner has failed to demonstrate due diligence in preserving his legal rights. The Court therefore concludes that Petitioner has failed to meet the requirements warranting application of the doctrine of equitable tolling.[4]

---

[4] Even if the Court were to equitably toll the running of the statute of limitations until July 15, 2003, when Petitioner should have received Ms. Aldridge's July 8, 2003, letter advising that the DPA had not filed a post-conviction motion on his behalf, then the habeas petition is still time barred because 294 days ran between July 15, 2003, and May 5, 2004, when Petitioner finally filed his CR 60.02 motion. Presuming, without deciding, that the CR 60.02 motion was properly filed and thus tolled the one-year limitations period under § 2244(d)(2) during its pendency, the Kentucky Supreme Court denied discretionary review on November 16, 2005, the date on which the statute of limitations would have begun to run again. Ninety-eight days ran between November 16, 2005, and Petitioner's filing of his § 2254 petition on February 22, 2006. Petitioner's § 2254 petition is thus still time barred because, excluding the time during which his CR 60.02 motion was pending in state court, 392 days ran between

Finally, Petitioner argues that he "is actually innocent of intentional Murder and he is innocent of burglary and robbery charges for which he was convicted due to incompetent, impaired counsel" because if counsel had not been impaired counsel "would have been able to identify a valid Extreme Emotional Disturbance defense and recognize that the Petitioner's conduct did not evince the possibility of a verdict for robbery or burglary." While the statute of limitations may also be equitably tolled upon a showing of a credible claim of actual innocence, *see Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005), Petitioner has not made such a showing. First, "'actual innocence means factual innocence, not mere legal insufficiency,'" *id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)), as effectively alleged by Petitioner. Second, "'[t]o be credible, [] a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Souter*, 395 F.3d at 590 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Because Petitioner wholly fails to present any "new reliable evidence," he is not entitled to equitable tolling on the basis of actual innocence.

For the foregoing reasons, Petitioner has failed to meet his burden of proving entitlement to equitable tolling of the limitations period.

---

July 15, 2003, the date on which he should have received the letter notifying him that the DPA had not filed his state court motion, and February 22, 2006, the date he filed the instant § 2254 petition.

*C. Conclusion*

Petitioner has failed to demonstrate that his § 2254 habeas petition is timely under the applicable statute and has failed to allege facts warranting tolling of the limitations period under either the traditional equitable-tolling analysis or the actual-innocence exception. Consequently, the § 2254 petition will be denied, and the action will be dismissed.

### III.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

When a district court denies a habeas petition on procedural grounds without addressing the merits of the petition, a certificate of appealability should issue if the petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. at 484. If the petition was denied on procedural grounds, both showings must be made before a certificate of appealability should issue and the matter be heard on appeal. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* In such a case, no appeal is warranted. *Id.*

The Court is satisfied in the instant case that no jurists of reason could find its procedural ruling to be debatable. Thus, a certificate of appealability must be denied.

The Court will enter a separate Order consistent with this Memorandum Opinion.

Date:

cc:     Petitioner *pro se*
        Attorney General, Commonwealth of Kentucky, Office of Criminal Appeals, 1024 Capital Center Drive, Frankfort, KY 40601
4414.005